**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TIFFANY GREAR, ) | |
| ) | CASE NO. 3:13-cv-02407 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE JACK ZOUHARY |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Tiffany Grear ("Grear") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On March 26, 2010, Grear filed an application for POD, DIB, and SSI alleging a disability onset date of October 25, 2007.  (Tr. 51.)  Her application was denied both initially and upon reconsideration.

On May 18, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Grear, represented by counsel, and an impartial vocational expert ("VE") testified.  *Id*.  On June

22, 2012, the ALJ found Grear was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 60-62.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-eight (48) at the time of her administrative hearing, Grear was a "younger person" under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Grear has at least a high school education and past relevant work as a cashier and dispatcher. (Tr. 60.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Grear was insured on her alleged disability onset date, October 25, 2007, and remained insured through the date of the ALJ's decision, June 22, 2012. (Tr. 51.) Therefore, in order to

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

2

be entitled to POD and DIB, Grear must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

## IV. Summary of Commissioner's Decision

The ALJ found Grear established medically determinable, severe impairments due to morbid obesity and osteoarthritis; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 53-56.) Grear was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 56, 60.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Grear was not disabled. (Tr. 60-61.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists

in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Treating Physician*

Grear argues that the ALJ failed to follow social security regulations in weighing the

4

opinions of medical sources. (ECF No. 14 at 10.) Specifically, Grear asserts that the ALJ failed to give appropriate weight to the opinions of treating physician Karri L. Krendl, M.D. (ECF No. 14 at 12.) The Commissioner argues Dr. Krendl's opinion – that Grear was unable to work – was not entitled to any special deference. (ECF No. 15 at 20-22.) Furthermore, the Commissioner asserts that there was no basis for the restrictions in Dr. Krendl's opinion. *Id.*

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold.

---

[2] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.  Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406.  The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*.  It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855;  *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Grear asserts that the ALJ failed to give appropriate weight to the opinion of her treating physician, Dr. Krendl, as contained in a Basic Medical form provided by Ohio Job & Family

6

Services.³ (ECF No. 14 at 12.) Therein, Dr. Krendl indicated that Grear is morbidly obese, has a colostomy bag in place, has urinary incontinence, chronic depression, poor balance, and an inability to rise independently after a fall. (Tr. 475.) As such, she opined that Grear's ability to sit, stand/walk, and lift/carry were all affected. *Id*. Dr. Krendl did not specify how many hours Grear could sit or stand/walk in an 8-hour workday. *Id*. She did opine that Grear can lift up to five pounds both frequently and occasionally, but could not carry. *Id*. She further noted that Grear was unable to bend, was extremely limited in her ability to push/pull and perform repetitive foot movements, and was markedly limited in her ability to reach and handle. *Id*. Dr. Krendl indicated that said limitations were expected to last 12 months or more. *Id*.

Grear also points to a Medical Assessment and responses to Interrogatories, both dated August 15, 2011, completed by Dr. Krendl. (ECF No. 14 at 12, Exh. 15F, Tr. 476-488.) In the Medical Assessment, Dr. Krendl opined that lifting/carrying are affected. (Tr. 476.) She explained that Grear is unable to ambulate without falls and that lifting/carrying would increase the risk of falls. *Id*. Contrary to the Basic Medical form, here Dr. Krendl opined that Grear could not lift any weight. (Tr. 476-77.) Dr. Krendl asserted that Grear was "unable" to stand/walk due to her obesity, but did not specify the number of hours in an 8-hour workday. (Tr. 477.) Dr. Krendl also opined that Grendl "can not sit with feet dependent because of lower extremity edema." *Id*. Again, Dr. Krendl did not specify the number of hours Grear could sit in an 8-hour workday. *Id*. She further found that Grear could never climb, balance, stoop, crouch, kneel, or crawl. (Tr. 478.) Grear's ability to handle, finger, and feel, as well as her sensory functions, were unaffected. *Id*. Dr. Krendl concluded that Grear could not perform work at even the sedentary level. (Tr. 480.) In response to Interrogatories from the Social Security Administration, Dr. Krendl indicated that she was Grear's "family physician," and had treated Grear since September of 1993. (Tr. 481.) Dr. Krendl stated that Grear had been treated for

---

³ Though Grear asserts that this opinion was given in May of 2011 (ECF No. 14 at 12), that conclusion is not necessarily consistent with the document. (Tr. 475.) While the form indicates that Grear was last examined by Dr. Krendl on May 26, 2011, there is also a handwritten notation that states "updated 10/26/11." *Id*.

obesity, colostomy, arthritis, frequent falls, and depression. (Tr. 482.) Dr. Krendl asserted that Grear could not withstand the pressure of meeting normal standards of work and productivity due to frequent falls, poor balance, and poorly fitted colostomy supplies. (Tr. 483.) She opined that Grear could lift zero pounds occasionally/frequently, sit for zero hours, and would be unable to stand/walk in an eight-hour workday. (Tr. 484-85.) She offered no explanation except for referring back to her responses in the Medical Assessment. *Id.*

The ALJ ascribed "some weight" to Dr. Krendl's opinions but gave them "neither significant nor controlling weight." (Tr. 58.) The ALJ explained as follows:

> I cannot give this document at 15F "controlling weight" let alone great weight because there is no supporting treating notes with the rationale that flow from them. There is no basis for Dr. Krendle's lifting restrictions or the conclusion that the claimant is unable to sit safely in a chair. In fact, the claimant testified that she sits most of the day reading and watching television.
>
> Controlling weight is the term used in 20 CFR 404.1527(d) (2) and 416.927(d)(2) to describe the weight we give to a medical opinion from a treating source that must be adopted. The rule on controlling weight applies when all of the following are present:
>
> 1. The opinion must come from a "treating source," as defined in 20 CFR 404.1502 and 416.902. Although opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances, opinions from sources other than treating sources can never be entitled to "controlling weight."
>
> 2. The opinion must be a "medical opinion." Under 20 CFR 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. (*See* SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner.")
>
> 3. The adjudicator must find that the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques. The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion.
>
> 4. Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record.
>
> If any of the above factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight. It is an error to give an opinion controlling weight

> simply because it is the opinion of a treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record. However, when all of the factors are satisfied, the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion. For the reasons explained, I have given the opinion in 15F only some weight, in the context of all of the evidence, but not controlling or significant weight. As I note from the medical evidence, the claimant's primary problem is that she is morbidly obese.
>
> Additionally Dr. Krendle concluded that the claimant was disabled. However, Social Security Regulation 96-5p under the guidance of 20 CFR 404.1527, 416. 927 regulates that a finding of disability is an issue reserved for the Commissioner.

(Tr. 58-59.)

Throughout the remainder of the opinion, the ALJ also pointed out that Grear is able to drive and does so three times per week; that on a typical day Grear watches television and reads; that Grear's medical records, including the consultative examination and most recent treatment records, indicate that her bodily systems are within normal limits; and, that most of her treating physicians have advised her to exercise. (Tr. 59-60.) The ALJ noted that these recommendations suggest that neither Grear's weight nor her knees would prevent her from exercising. (Tr. 60.)

There is no merit to Grear's argument that the ALJ failed to consider the relevant factors from 20 C.F.R. § 404.1527(c)(2) in deciding the level of weight ascribed to Dr. Krendl's opinions. The ALJ clearly focused on two of the factors: the supportability of the opinion and its consistency. Specifically, the ALJ noted the complete lack of treatment notes from Dr. Krendl that would support her opinion as to Grear's functional limitations. (Tr. 58.) Notably, Grear's argument in her Brief on the Merits fails to cite a single *treatment* note of record from the relevant time period that supports the opinions rendered by Dr. Krendl.[4] (ECF No. 14 at 10-15.) It is not this Court's function to develop an argument on a plaintiff's behalf. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not

---

[4] In her recitation of the medical evidence, Grear does mention her own subjective statement, as recorded by Dr. Krendl, that she had recently fallen in her driveway. (Tr. 489.)

9

sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).

Nonetheless, this Court has reviewed the medical evidence of record covering the time period from the alleged onset date, October 25, 2007 through the date of the ALJ's decision, June 22, 2012. During this over three and a half year span, the record appears to contain only three treatment visits with Dr. Krendl.[5] (Tr. 363, 387, 471, 489.) Furthermore, these treatment notes are rather unremarkable. The ALJ's finding, that Dr. Krendl's own treatment notes did not support the functional limitations she assessed, is an accurate description of the treatment notes and constitutes a good reason for rejecting Dr. Krendl's unsupported opinions.[6] Dr. Krendl opined that Grear could sit for zero hours in an 8-hour workday due to lower extremity edema. (Tr. 477, 484-85.) However edema is not noted anywhere in the three treatment notes from the alleged time period of disability. (Tr. 363, 387, 471, 489.) Grear's brief and reply do not point to any evidence from any source suggesting the presence of lower extremity edema other than Dr. Krendl's August 2011 Medical assessment which was not made for the purposes of treatment. (ECF Nos. 14 & 16.) Dr. Krendl also opined that Grear was susceptible to falls, but only one of the three treatment notes mentions ambulatory instability. (Tr. 489.) Notably, that observation appears in the same treatment note wherein Grear had reported to Dr. Krendl that she had fallen earlier in the week. *Id*. Furthermore, Grear's statement was relayed at the same visit where she brought Dr. Krendl a disability form to complete. It was, in fact, completed the same day and contained the limitations discredited by the ALJ. *Id*. The finding that Dr. Krendl's treatment notes do not support a complete inability to walk/stand constitutes a good reason for rejecting said opinion where it is supported only by an isolated notation based on a

---

[5] The treatment note contained at pages 363 and 387 are duplicates and both refer to treatment rendered on April 7, 2010.

[6] Admittedly, the ALJ could have been more specific in explaining exactly how Dr. Krendl's treatment notes failed to support the functional limitations she assessed. Nonetheless, this Court cannot find that the explanation was so deficient as to require remand.

self-reported fall.[7] For the same reasons, the ALJ adequately explained why he rejected the lifting/carrying prohibition assessed by Dr. Krendl, which was based on her opinion that carrying objects would lead to greater instability. The ALJ was also correct in finding that Dr. Krendl's three treatment notes contain no information even remotely related to an inability to lift/carry objects.[8]

The ALJ also considered whether Dr. Krendl's opinion as to Grear's functional limitations was consistent with the record as a whole. In this context, the ALJ specifically pointed to Grear's ability to drive and to sit and read or watch television most days. (Tr. 59.) The ALJ also pointed to Grear's most recent treatment notes of record from 2012, which repeatedly advised Grear to exercise regularly.[9] (Tr. 59, *citing* Exh. 19F.) The ALJ's conclusion

---

[7] Courts have held that "[w]hen a treating physician's opinion is based on a claimant's self reports which are themselves not credible, it is not error to assign little weight to the opinion." *Webb v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 4264, 2014 WL 129237 at * 6 (E.D. Tenn. Jan. 14, 2014) (*citing Vorholt v. Comm'r of Soc. Sec.*, 409 Fed App'x 883, 889 (6th Cir. 2011)). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (affirming ALJ's rejection of treating physician opinions where "[t]hese doctors formed their opinions solely from Smith's reporting of her symptoms and her conditions and the ALJ found that Smith was not credible"); *Stevenson v. Astrue*, 2010 U.S. Dist. LEXIS 78475, 2010 WL 3034018 at * 8 (M.D. Tenn. Aug. 3, 2010) (finding that a medical opinion "based on [an] incredible self-report could reasonably be given insignificant weight by an ALJ when the credibility determination is based on substantial evidence"). The ALJ expressly found that Grear was not credible, and she has not challenged the propriety of the ALJ's credibility analysis. (Tr. 59.)

[8] Dr. Krendl stated that Grear's limitations are partially based on urinary incontinence and poorly fitted colostomy supplies. (Tr. 475, 483.) The ALJ did not explicitly address the impact of Grear's alleged incontinence on her ability to work. While all three of Dr. Krendl's treatment notes mention urinary incontinence, Dr. Krendl's notes from May 25, 2011 specify in the "Subjective" portion that Grear's incontinence was nocturnal. In addition, Dr. Krendl opined that Grear's prescription for Oxybutynin, a medication used to relieve urinary difficulties, resulted in "fair control." (Tr. 375.) As such, Dr. Krendl's notes do not appear to support any work related limitations stemming from incontinence. With respect to the colostomy, the only discussion in Dr. Krendl's treatment notes on that topic contradicts her opinion, as she noted that the colostomy was "functioning" and the "apparatus appears to fit appropriately." (Tr. 471.) The ALJ expressly references the normal functioning of the colostomy bag. (Tr. 54.)

[9] In February, March, April, May, and June of 2012, Grear was instructed by her treatment providers at Health Partners of Western Ohio to "exercise regularly." (Tr. 582, 589,

11

– that Dr. Krendl's opinion indicating Grear can sit and stand/walk zero hours in an 8-hour workday would be inherently inconsistent with the ability to exercise – is a reasonable reading of the evidence. The ALJ also noted that physical examinations of Grear by treating sources were largely within normal limits notwithstanding the presence of some osteoarthritis and her morbid obesity. (Tr. 59, *citing* Exh. 19F.) In addition, the ALJ relied on the consultative examination of Sushil M. Sethi, M.D. (Tr. 59, *citing* Exh. 7F.) Dr. Sethi performed a consultative examination wherein he examined Grear's extremities and performed range of motion testing. (Tr. 418.) Dr. Sethi observed no signs of edema and Grear was able to walk on her tiptoes and heels, and had a normal gait. *Id*. Dr. Sethi noted that while Grear came to the examination with a walker, its use was "not medically necessary or medically appropriate." *Id*. Dr. Sethi concluded Grear could sit 4-6 hours, walk 2-3 hours, and stand 1-2 hours in an 8-hour day. (Tr. 419.) Given the combination of all the above, the ALJ reasonably determined that Dr. Krendl's opinion was not consistent with the record as a whole and sufficently explained her decision.

It is true that the ALJ did not discuss all the factors in 20 C.F.R. § 404.1527(c)(2). However, Grear cites no law suggesting that an ALJ must discuss each and every factor in every case. Furthermore, the factors omitted do not appear to cut in Grear's favor. While Dr. Krendl was Grear's longstanding physician, the frequency of visits during the period of alleged disability was rather sparse with only three documented treatment visits in a span of time exceeding 3.5 years. The ALJ also did not discuss Dr. Krendl's specialization. However, Dr. Krendl's response to the Social Security Administration indicates that she is a "family physician" with no declared specialties. (Tr. 481.) As such, this Court finds Grear's first assignment of error to be without merit.

### *Severe Impairments*

Grear also argues that the ALJ erred by failing to designate her "past ruptured diverticula with placement of colostomy bag" or any of her mental impairments as "severe." (ECF No. 14 at 15-18.)

---

600, 604, 611.)

At Step Two of the sequential evaluation, an ALJ must determine whether a claimant has a "severe" impairment. *See* 20 C.F.R. §§ 404.1520(a)(40(ii) & 416.920(a)(4)(ii). To determine if a claimant has a severe impairment, the ALJ must find that an impairment, or combination of impairments, significantly limits the claimant's physical or mental ability to do "basic work activities." *See* 20 C.F.R. § 416.920(c). "An impairment ... is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," and include: (1) physical functions such as standing, sitting, lifting, handling, etc.; (2) the ability to see, hear and speak; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and, (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Sixth Circuit construes the Step Two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). *See also Anthony v. Astrue*, 2008 WL 508008 at * 5 (6th Cir. Feb. 22, 2008). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." SSR 96–3p, 1996 WL 374181 at *1. However, if an ALJ makes a finding of severity as to just one impairment, the ALJ then "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96–8p, 1996 WL 374184, at *5. When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Nejat v. Comm'r of Soc. Sec.*, 2009 WL 4981686 at * 2 (6th Cir. 2009). The Sixth Circuit has observed that where a claimant clears the hurdle at Step Two (*i.e.* an ALJ finds that a claimant has established at least one severe impairment) and claimant's severe and non-severe impairments are considered at the remaining steps of the sequential analysis, "[t]he fact that some of [claimant's] impairments were

13

not deemed to be severe at step two is ... legally irrelevant." *Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008).

Here, at Step Two, the ALJ "considered the claimant's alleged impairments of colon resection, breathing problems, sleep apnea, anxiety, and depression (both singly and in combination) and found those impairments to be non-severe."[10] (Tr. 54.) The ALJ did, however, consider all of Grear's impairments at the remaining steps of the sequential evaluation, as she expressly stated she was considering "all symptoms" that were substantiated by the record. (Tr. 56.) The ALJ, therefore, did not commit reversible error by finding that Grear's mental impairments and status post colostomy bag placement were non-severe.

Furthermore, the ALJ's statement that she considered all of Grear's impairments at the later steps in the sequential analysis is not merely boilerplate language, as the RFC determination included a number of mental limitations. Specifically, aside from the physical restrictions, the RFC limited Grear to "simple and complex tasks that do not require strict production demands," a work environment that did "not require contact with the public on an occasional basis," and "low stress work." (Tr. 56.) In her reply brief, Grear suggests that these limitations were incorporated to accommodate her "other" (*i.e.* physical) impairments and not her depression or anxiety. (ECF No. 16 at 1.) The Court is perplexed by this assertion, as it is difficult to conclude that these limitations were necessitated by Grear's morbid obesity or osteoarthritis. Grear fails to explain this argument. She also neglects to identify any additional mental limitations she feels should have been included in the RFC, or identify supporting medical opinions. Similarly, Grear also fails to identify any limitations resulting from her colostomy bag that were not already included in the RFC.

Accordingly, Grear's second assignment of error is also without merit.

---

[10] The ALJ found that Grear's colostomy bag was "still in place and functioning normally." (Tr. 54.) She also concluded that Grear's anxiety and depression did not cause more than minimal limitations as it related to Grear's ability to perform basic mental work activities. (Tr. 55.)

**VII. Decision**

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision should be AFFIRMED and judgment entered in favor of the defendant.

<div style="text-align:right">s/ Greg White<br>United States Magistrate Judge</div>

Date: October 10, 2014

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**